## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                         No.  CR-03-477 MV

ERIC L. JOHNSON,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Withdraw Plea of Guilty as per Fed. R. Crim. Proc. 11(d)(2)(B) **[Doc. No. 150]**, filed November 16, 2004. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**.

### BACKGROUND

On March 11, 2003, a three-count Indictment was returned charging Defendant with felon in possession of a firearm, possession with intent to distribute less than 50 kilograms of marijuana, and possession of a firearm during or in relation to a drug trafficking crime.  On May 23, 2003, the Court appointed Joseph Gandert of the Office of the Federal Public Defender to represent Defendant.  On August 14, 2003, Defendant filed a motion to suppress the statements and physical evidence obtained as a result of his detention.  On September 23, 2003, Defendant filed a motion to withdraw Mr. Gandert as counsel but withdrew this motion on October 7, 2003.  On January 27, 2004, the Court held an evidentiary hearing on Defendant's motion to suppress.  In an Memorandum Opinion and Order dated February 25, 2004, the Court denied Defendant's motion to suppress.

Trial was scheduled to begin on March 15, 2004. On March 10, 2004, the government moved for a continuance of the trial which the Court granted on March 11, 2004. Trial was rescheduled for May 17, 2004 and a hearing on motions *in limine* was scheduled for May 6, 2004.

On April 21, 2004, Defendant filed a motion for dismissal of counsel and wrote a letter to the Court outlining his conflict with his attorney, which included a contention that his attorney refused to conduct the proper investigation needed for trial or to discuss trial strategy with him. On the same day, Mr. Gandert filed a motion to withdraw as counsel due to the breakdown in the attorney-client relationship. On April 27, 2004, the Court granted Mr. Gandert's motion and relieved him and the Office of the Federal Public Defender as counsel. That same day, Douglas Couleur was appointed to represent Defendant. Because of this change in counsel, trial was rescheduled for August 16, 2004.

On July 14, 2004, Defendant filed a motion for dismissal of counsel, citing the same complaints about Mr. Couleur as he did about Mr. Gandert, namely that he refused to conduct investigation or discuss trial strategy with him. On August 17, 2004, the Court held a hearing on Defendant's motion and, that same day, granted the motion dismissing Mr. Couleur as counsel. Also on August 17, 2004, Ann Steinmetz was appointed to represent Defendant. As a result of this second change of counsel, the trial setting again was vacated and rescheduled for October 18, 2004.

On September 22, 2004, the Court held a status conference during which Defendant advised that he wanted to dismiss Ms. Steinmetz as counsel and proceed *pro se*. The Court ruled that it would allow Defendant to proceed *pro se* with Ms. Steinmetz as stand-by counsel. Thereafter, Defendant filed on his own behalf several motions *in limine*, to which the government submitted responses. Defendant also filed a motion for a continuance of the trial "for an indefinite period of time" on October 4, 2004 and an addendum to that motion on October 6, 2004. The Court denied the requests in Defendant's motion and the addendum.

On October 18, 2004, the Court held jury selection during which a jury was selected and trial was set to begin on October 25, 2004.  On October 20, 2004, the Court held a hearing on the parties' motions *in limine*.  The Court memorialized its rulings on these motions in an Order dated October 21, 2004.

On October 21, 2004, Defendant entered into a plea agreement pursuant to which he agreed to plead guilty to Count 3 of the Indictment, which charged him with possession of a firearm during or in relation to a drug trafficking crime.  Defendant signed the plea agreement *pro se*.  In addition, Ms. Steinmetz signed the plea agreement as stand-by counsel for Defendant.  Also on October 21, 2004, Defendant signed a consent to enter his plea before United States Magistrate Judge Alan C. Torgerson.

Later on October 21, 2004, Judge Torgerson held a plea hearing.  At the beginning of the hearing, Defendant advised the Court that, prior to proceeding, he wanted to reinstate Ms. Steinmetz as his attorney.  The Court first confirmed with Ms. Steinmetz that she was willing to do that and then allowed her to be reinstated as counsel of record.  During the hearing, Defendant pleaded guilty to the charges set forth in Count 3 of the Indictment.  The Court found that Defendant was fully competent and capable of entering an informed plea; that Defendant was aware of the nature of the charges and the consequences of the plea; and that the plea of guilty was a knowing and voluntary plea supported by independent basis in fact containing each of the essential elements of the offense.  Accordingly, the Court accepted Defendant's plea of guilty.

On November 16, 2004, Defendant filed the instant motion to withdraw his guilty plea.  Along with that motion, Defendant filed a Notice of Termination of Appointment and Request for Other Counsel on Stand-by Basis, requesting that the Court relieve Ms. Steinmetz of her appointment as

counsel and appoint someone else to represent him on a standby basis.  On November 30, 2004, the

government filed a response in opposition to Defendant's motion to withdraw his guilty plea.

## DISCUSSION

Rule 11(d)(2) of the Federal Rules of Criminal Procedure provides that a defendant may

withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if: (A) the

court rejects a plea agreement under Rule 11(c)(5); or (B) the defendant can show a fair and just reason

for requesting the withdrawal."  Under Rule 11(d)(2)(B), the burden rests with Defendant to show that

there is a fair and just reason for allowing withdrawal of his guilty plea.  *See United States v. Gordon*,

4 F.3d 1567, 1572 (10th Cir. 1993), *cert. denied*, 510 U.S. 1184 (1994).  The Tenth Circuit has

enumerated the following seven factors which the court must consider in determining whether Defendant

has met his burden: "(1) whether the defendant has asserted his innocence, (2) prejudice to the

government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's

assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial

resources."  *Id.*  The determination of what circumstances justify granting a motion for withdrawal of

a guilty plea is "within the sound discretion of the trial court."  *United States v. Wade*, 940 F.2d 1375,

1377 (10th Cir. 1991).  Accordingly, the district court's determination is reviewed only for abuse of

discretion.  *Id.*

On balance, application of the *Gordon* factors does not support Defendant's request for

permission to withdraw his guilty plea.  First, Defendant does assert his innocence.  During the plea

hearing, however, Defendant agreed under oath with the government's recitation of the factual basis for

the charges set forth in Count 3 of the Indictment.

Second, trial in this matter was rescheduled twice due to Defendant's repeated requests to

dismiss his counsel.  Accordingly, the government has already begun preparation for this trial at least

three times.  The government represents that, in preparation for trial, it was obligated to meet several

times with eight witnesses, including the case agent and the arresting officer, Nick Ramos. Additionally,

Defendant pleaded guilty only after motions *in limine* were briefed and argued and a jury was selected.

According to the government, three of its witnesses are from out of state, two from California and one

from Nevada.  Moreover, the government represents that Officer Ramos was activated by the National

Guard and deployed to Iraq at the end of November.   Given the unavailability of one of the

government's main witnesses and the time and resources that the government has already expended on

this matter, allowing Defendant to withdraw his guilty plea would prejudice the government.  *See*

*United States v. Saenz*, 10 Fed. Appx. 701, 708 (10th Cir. 2001) (holding that "withdrawal 'likely

would prejudice the government by forcing it to undergo much of the same process it already has

completed.'") (citation omitted), *cert. denied*, 536 U.S. 912 (2002).

      Third, Defendant filed the instant motion three weeks after he filed his guilty plea.  The Court

does not find this to be a significant delay.

      Fourth, the Court has expended time and resources to prepare for this trial three times.  As set

forth above, Defendant entered his guilty plea only after the jury had been selected and the Court had

ruled on the many motions *in limine* filed by the parties.  Defendant has now filed his fourth motion to

dismiss his counsel and intends to represent himself.  Given the history of this case, there would be

considerable inconvenience to the Court to allow Defendant to withdraw his guilty plea and proceed to

trial at this point.  *See Saenz*, 10 Fed. Appx. at 708 ("[T]he court would undoubtedly be inconvenienced

by permitting a knowing and voluntary plea to be withdrawn right before sentencing.")

      Fifth, Defendant has not established that he received ineffective assistance of counsel.  In order

to show ineffective assistance of counsel in the context of a guilty plea, "[a] defendant must show (1)

that his counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's

deficient performance was prejudicial." *United States v. Kramer*, 168 F.3d 1196, 1201 (10th Cir. 1999). In order to meet the first prong of this test, the defendant must show "that the attorney's conduct did not fall within the wide range of competence demanded of attorneys in criminal cases." *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996). For the second prong of this test, "the defendant must establish that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." *Kramer*, 168 F.3d at 1201.

Defendant first asserts that his counsel did not advise him of the consequences of signing the plea agreement, including the consequence that he might be classified as a career offender in the Alabama case based on his conviction in the instant case. During the plea hearing, however, the following exchange took place:

> THE COURT: Mr. Johnson, in discussing the indictment with Ms. Steinmetz, has she also gone over the potential penalties that you're facing with respect to these charges?

> THE DEFENDANT: Yes.

> THE COURT: Do you understand these penalties?

> THE DEFENDANT: Yes.
> ***
> THE COURT: Mr. Johnson, has Ms. Steinmetz explained to you or do you understand that if you plead guilty here today, there may be other consequences? . . . In addition, if you plead guilty here today and if at a later date you are arrested, charged, and convicted of another crime, you may receive a more severe penalty for that crime as a result of pleading guilty here today. Do you understand that?

> THE DEFENDANT: Yes.
> ***
> THE COURT: Did Ms. Steinmetz go over with you and explain to you the federal sentencing guidelines and how they might apply in your case?

> THE DEFENDANT: Yes.

-6-

THE COURT: Do you understand that your attorney can only give you her best estimate as to what your sentence will be, and that it will be up to the judge who's going to sentence you to determine your sentence?

THE DEFENDANT:  Yes.

The record of the plea hearing thus reveals that, before he entered his plea, Defendant was advised that certain consequences could result from his plea, including an enhanced sentence in another criminal case.  In addition, the record demonstrates that, before pleading guilty, Defendant was advised that his attorney's advice regarding the length of his sentence could only be an estimate.  In *Gordon*, the Tenth Circuit held that "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *Gordon*, 4 F.3d at 1570.  Relying in part on *Gordon*, in *United States v. Rith*, 63 Fed. Appx. 463 (10th Cir. 2003), the Tenth Circuit held that "a defendant is not entitled to withdraw a guilty plea based on an erroneous prediction that he would not be sentenced as a career offender where he was well advised that imposition of a sentence different from the one he expected would not be a basis for withdrawing the plea."  *Id.* at 464.  Under this precedent and under the circumstances as demonstrated by the plea hearing, any failure by Ms. Steinmetz to predict that Defendant would be classified as a career offender in the Alabama case would not rise to the level of ineffective assistance of counsel.

Defendant also asserts that his counsel did not, as he requested, obtain the services of an investigator or an expert witness to calculate the speed at which he was traveling when he was stopped and the speed at which Officer Ramos was traveling when he stopped him.  As noted above, Defendant repeatedly has expressed his dissatisfaction with his appointed attorneys for failing to pursue his desired investigations or trial strategies.  The Tenth Circuit has held, however, that where the legal arguments the defendant contends his counsel should have raised are meritless, the attorney's failure to pursue such arguments is neither deficient nor prejudicial under the ineffective assistance standard.  *See Kramer*,

-7-

168 F.3d at 1202.  Moreover, the law is clear that  the "decision not to pursue every lead" provided by

the defendant is within an attorney's "sphere of decision making as an attorney."  *United States v. Carr*,

80 F.3d at 418.  In *Carr*, the Tenth Circuit quoted from the Supreme Court's decision in *Strickland v.*

*Washington*, 466 U.S. 668 (1984), which stated:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision
> that makes particular investigations unnecessary.  In any effectiveness case, a particular
> decision not to investigate must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 691.

In the instant case, Defendant's appointed attorneys, all three of whom this Court, in its

experience, has found to be highly qualified criminal defense attorneys, decided in their judgment not

to pursue certain investigations and trial strategies requested by Defendant.  Once he began proceeding

*pro se*, Defendant filed motions *in limine* seeking permission from the Court to pursue on his own these

investigations and trial strategies.  The Court denied the majority of Defendant's motions because they

were based on an improper interpretation of the law and sought relief which the Court was unauthorized

to provide.  Because the arguments that Defendant believed his counsel should have raised thus were

legally meritless, the Court cannot find that the decision of his attorneys not to raise such arguments

constituted ineffective assistance.  Rather, the Court finds that Defendant's attorneys' refusal to pursue

every lead provided by Defendant was well within the sphere of reasonable decision making reserved

to attorneys.

Moreover, at the plea hearing, Defendant stated under oath that he was satisfied with his legal

representation.  Specifically, Defendant responded to the Court's questions as follows:

> THE COURT:  Now, you have been representing yourself pro se, but Ms.
> Steinmetz has been available as your stand-by counsel.  Do you feel that you have had
> sufficient opportunity to talk to her if there are any questions that you might have had
> regarding the charges against you or any defenses you might have to those charges?

THE DEFENDANT:  Yes.

THE COURT: And has Ms. Steinmetz been able to answer your questions?

THE DEFENDANT:  Yes, she has.

THE COURT:  Are you satisfied with the advice and representation you have received from Ms. Steinmetz?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any objections or complaints at all regarding your attorney?

THE DEFENDANT:  No, I don't.

Sixth, Defendant has failed to establish that his plea was not knowing and voluntary.  "The test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Kramer*, 168 F.3d at 1200 (citation omitted).  Defendant contends that he was coerced and pressured into signing a plea agreement, in part because of the Court's refusal to grant either his eleventh hour motion for a continuance or his motions to permit him to hire an investigator and an expert witness.  In addition, as set forth above, Defendant claims that he did not know the full consequences of the plea agreement before signing it. In summary, Defendant states that he did not fully know and understand what he was signing when he signed the plea agreement.

The record does not support Defendant's claim that his plea was less than a voluntary and intelligent choice.  First, as set forth above, the record is clear that, before he entered his plea, Defendant was advised that certain consequences could result from his plea, including an enhanced sentence in another criminal case.  In addition, the record demonstrates that, before pleading guilty, Defendant was advised that his attorney's advice regarding the length of his sentence could only be an estimate. Moreover, the plea hearing included the following questions by the Court and answers by Defendant:

THE COURT:  Do you understand what's happening here today and what you're doing by entering into this plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  Is anyone forcing you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone threatened you in any way in order to get you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone made any promises to you, other than the stipulations that are in your plea agreement, in order to get you to plead guilty?

THE DEFENDANT:  No.

***

THE COURT:  Did you have an opportunity to review the plea agreement that you've entered into with the government with Ms. Steinmetz?

THE DEFENDANT:  Yes.

THE COURT:  Did you go over all the terms and conditions and stipulations in the plea agreement?

THE DEFENDANT:  Yes, I have.

THE COURT:  Was Ms. Steinmetz able to answer any questions that you might have had regarding the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  All right.  After you went over the plea agreement with Ms. Steinmetz, did you sign the original plea agreement here this afternoon?

THE DEFENDANT:  Yes.

THE COURT:  Did you sign that plea agreement voluntarily?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any questions about the plea agreement that you would like to discuss with Ms. Steinmetz at this time?

THE DEFENDANT:  No, I don't.

*\*\**

THE COURT:  Now that you've heard what the Assistant United States Attorney has said regarding the plea agreement, do you have any questions at this time that you would like to discuss with Ms. Steinmetz or with the Court?

THE DEFENDANT:  No, I do not.

*\*\**

THE COURT: Mr. Johnson, do you admit that if this case were to go to trial, the government could prove those facts that the Assistant United States Attorney has just stated?

THE DEFENDANT:  Yes.

*\*\**

THE COURT:  How do you plead then, Mr. Johnson, with respect to the charges set forth in Count III of the indictment, guilty or not guilty?

THE DEFENDANT:  I plead guilty.

This "thorough exchange between the court and [Defendant] during administration of the Rule 11 protocol . . . clearly demonstrates that [Defendant] entered his plea willingly and voluntarily at the time he made it." *Carr*, 80 F.3d at 417.  Moreover, Defendant's argument that the Court's decisions on his motions pressured him into signing the plea agreement is unavailing.  This case has been set for trial numerous times.  Defendant had ample time to prepare his case for trial and had the assistance of three separate attorneys in doing so before he decided to proceed *pro se* on the eve of his final trial setting in October 2004.  Also, as set forth above, Defendant's requests for permission to hire an investigator and an expert witness were legally meritless and beyond the Court's authority to grant. Accordingly, while any pressures to enter into the plea agreement "might have been palpable to [Defendant], they do not vitiate the voluntariness of his plea; it was still his choice to make." *Id.*

Seventh, allowing Defendant to withdraw his plea would result in a waste of judicial resources. This is especially true given the strength of the evidence against Defendant and the consequent likelihood of conviction. *See United States v. Glover*, 911 F.2d 419, 421 (10th Cir. 1990) ("In the face

-11-

of his admitted and palpable guilt, permitting the defendant to withdraw his plea would only result in a postponement of the inevitable.").  Moreover, as set forth above, the Court has already expended substantial resources hearing motions, selecting a jury and preparing for trial in this matter.  In this context, the waste of judicial resources that would be the inevitable consequence of granting Defendant's request to withdraw his plea "must be taken into account and does weigh against [Defendant]."  *Carr*, 80 F.3d at 421.

Accordingly, six of the seven *Gordon* factors weigh against Defendant.  As set forth above, the Court's determination of whether it would be fair and just to allow Defendant to withdraw his guilty plea is dependent on an analysis of these factors.  Based on its analysis of the *Gordon* factors, the Court thus is constrained to find that Defendant has not met his burden of showing that withdrawal of his guilty plea is warranted.

Finally, the Court does not find availing Defendant's argument that withdrawal of the guilty plea is warranted because he was not aware of the effect that a conviction in the instant case would have on the length of his sentence in a federal case pending against him in the District of Alabama. According to the government, after the plea hearing, the government received information from the United States Attorney's Office in Alabama, which it relayed to Ms. Steinmetz, that Defendant now has two convictions for crimes of violence and that any sentence imposed in the Alabama case likely would be consecutive to, rather than concurrent with, the sentence imposed in the instant case.  In effect, Defendant's argument rests on the issue of the combined length of his sentences.  The Tenth Circuit, however, has made clear that "[a] defendant's dissatisfaction with the length of his sentence generally is insufficient reason to withdraw a plea."  *United States v. Elias*, 937 F.2d 1514, 1520 (10th Cir. 1991); *see also Gordon*, 4 F.3d at 1573.

-12-

## CONCLUSION

Defendant has not carried his burden of establishing a fair and just reason for allowing withdrawal of his guilty plea.  Accordingly, he is not entitled to relief pursuant to Rule 11(d)(2)(B).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Withdraw Guilty Plea **[Doc. No. 150]** is hereby **DENIED**.


Dated this 22nd day of July, 2005.


_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff:
Roberto Ortega

Defendant *Pro Se*:
Eric L. Johnson